# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

24 Indigo Creek Trail,
Durham, North Carolina 27712

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: 1:09mJ1018-1

(Further described below)

I Michael Smith being duly sworn depose and say:

I am a(n) Special Agent with the North Carolina State Bureau of Investigation and have reason to believe
(Official Title)

that (name, description and or location)
located within the above premises

in the Middle District of North Carolina, there is now concealed a certain person or property, namely (describe the person or property to be searched)
See Attachment A referenced and incorporated herein

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
evidence, fruits and instrumentalities of violations of federal criminal law concerning violations of Title 18 United States Code Sections 2251, 2252, and 2252A

concerning a violation of Title 18 United States Code United States Code, Section(s) 2251, 2252, 2252A . The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof. YES X☐ NO

Michael DeFranco
USAO Durham, North Carolina
()

Signature of Affiant

Sworn to before me, and subscribed in my presence

6/24/09
Date

in Durham, North Carolina

Name and Title of Judicial Officer          Signature of Judicial Officer

**Wallace W. Dixon**
**United States Magistrate Judge**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **IN RE SEARCH OF:** | : | |
| | : | **Case No.:** 1:09MJ1018-1 |
| **The Premises Located At:** | : | |
| **24 Indigo Creek Trail** | : | |
| **Durham, NC 27712** | : | **Under Seal** |
| | : | |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, E. Michael Smith, Jr., having been duly sworn, depose and state as follows:

1. Your affiant in this matter, E. Michael Smith, Jr., is a citizen of the United States of America, and a resident of Raleigh, North Carolina. In May 1996, your affiant graduated from North Carolina Wesleyan College with a Bachelor of Science degree in Accounting. From January 1, 1990, until present your affiant has been employed by the North Carolina State Bureau of Investigation (NCSBI). From January 1, 1990, until January 24, 1997, your affiant was employed as a computer consultant with NCSBI Division of Criminal Information. During that period your affiant received numerous hours of training from Wake Technical Community College in microcomputers and computer networks. Your affiant also received instruction in high tech computer crime investigations involving the forensic search and seizure of microcomputers which was provided by the North Carolina Justice Academy and the National Consortium for Justice Information and Statistics (SEARCH, Inc.). From January 24, 1997, until the present, your affiant has been employed by the NCSBI as a special agent assigned to Financial Crime Investigations, and then Computer Crime Investigations to investigate child exploitation cases including receipt and transmission of child pornography, and enticement or solicitation of minors with the intent to commit an unlawful sex act with an adult, and other

Internet crimes against children. I have received training in the area of child pornography and child sexual exploitation as well as specialized instruction on how to conduct investigations of child sexual exploitation and child pornography through the United States Postal Inspection Service, the Federal Bureau of Investigation, and the Department of Justice. I have also received training in digital evidence investigations and Internet child sexual exploitation investigations. I have received training from the Federal Law Enforcement Training Center as a Seized Computer Evidence Recovery Specialist. I am currently a member of the North Carolina Internet Crimes Against Children Task Force.

2. Your affiant respectfully submits this affidavit in support of an application for a warrant to search the entire premises known as 24 Indigo Creek Trail, Durham, NC (hereinafter "PREMISES"). For the reasons set forth in this affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 United States Code Section 2251(a) and (b), 18 United States Code Section 2252(a)(2), and 18 United States Code Section 2252A(a)(5)(B) are located within this PREMISES.

**FACTS AND CIRCUMSTANCES**

3. The statements in this affidavit are based on my personal investigation, on information provided by other law enforcement agents, to include Washington, DC Metropolitan Police Department Detective Timothy Palchak, Federal Bureau of Investigation Special Agent Chadwick Elgersma, on source information as described below, and on my experience and background as a police officer. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable

cause to believe that evidence, fruits, and instrumentalities of the violations of 18 United States Code Section 2251(a) and (b), 18 United States Code Section 2252(a)(2), and 18 United States Code Section 2252A(a)(5)(B) are presently located at the PREMISES.

4. This affidavit is organized as follows: Paragraphs 5 and 6 provide relevant statutory authority. Paragraphs 7 and 8 provide definitions of technical terms used throughout the balance of this Affidavit. Paragraph 9 provides definitions pertaining to child pornography. Paragraphs 10 and 11 provide details regarding the use of computers with respect to child pornography. Paragraphs 12-20 discuss this investigation and the factual basis for my opinion that there is probable cause to believe that evidence of possession of child pornography is located on the PREMISES. Paragraphs 21-32 request permission to search the PREMISES and describe the methods of that search.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, Section 2251 - sexual exploitation of children, Title 18, United States Code, Section 2252 - certain activities relating to the sexual exploitation of minors, and Title 18, United States Code, Section 2252A - certain activities relating to material constituting or containing child pornography.

6. The relevant statutory text for purposes of this Affidavit is:

a. Title 18, United States Code, Section 2251, which states:

> a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor

engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.
(b) Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

b. Title 18, United States Code, Section 2252(a)(2), which states:

Any person who knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if-
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct; .... shall be punished as provided in subsection (b) of this section.

c. Title 18, United States Code Section 2252A(a)(5)(B) states that any person who:

knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

shall be punished as provided in subsection (b) of that Section.

d. Title 18, United States Code, Section 2256(8) defines "child pornography" as:

any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where–

(a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

e. Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct," as "actual or simulated":

(i) sexual intercourse, including genital-genital oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(ii) bestiality;
(iii) masturbation;
(iv) sadistic or masochistic abuse; or
(v) lascivious exhibition of the genitals or pubic area of any person.

## THE INTERNET AND DEFINITIONS OF TECHNICAL TERMS PERTAINING TO COMPUTERS

7. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite communications. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit websites (see definition of "websites"

---

1 *The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."*

below), and make purchases from them or otherwise communicate with the operators of the website.

8. Set forth below are some definitions of technical terms, most of which are used throughout this Affidavit pertaining to the Internet and computers more generally.

a. **Client/Server Computing**: Computers on the Internet are identified by the type of function they perform. A computer that provides resources for other computers on the Internet is known as a **server**. Servers are known by the types of service they provide, that is, how they are configured. For example, a **web server** is a machine that is configured to provide web pages to other computers requesting them. An **e-mail server** is a computer that is configured to send and receive electronic mail from other computers on the Internet. A **chat-room server** is a computer or series of computers that host **chat rooms**. A **client computer** is a computer on the Internet that is configured to request information from a server configured to perform a particular function. For example, if a computer is configured to browse web pages and has web page browsing software installed, it is considered a **web client**.

b. **Computer system and related peripherals, and computer media**: As used in this affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, routers, in addition to computer photographs, Graphic

Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including, but not limited to, JPG, GIF, TIF, AVI, and MPEG.

c. **Internet Service Providers (ISPs) and the Storage of ISP Records**: Internet Service Providers are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband-based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite-based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password. ISPs maintain records ("**ISP records**") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows

for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "**electronic storage**," see 18 U.S.C. § 2510(17), and the provider of such a service is an "**electronic communications service.**" An "**electronic communications service,**" as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "**remote computing service.**" 18 U.S.C. § 2711(2).

d. **Website**: A website consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

e. **Modem**: A modem is an electronic device that allows one computer to communicate with another.

f. **Chat Room**: A Web site or server space on the Internet where live keyboard conversations (usually organized around a specific topic) with other people occurs.

g. **Yahoo! Instant Messenger**: An internet-based program that allows computer users to chat online with other computer users and also to exchange digital pictures, video, or other media with one another.

h. **Webcam**: A digital video camera which can be attached to a computer and through which live video images can be sent from one computer user to another.

**DEFINITIONS AND TERMS PERTAINING TO CHILD PORNOGRAPHY AND VISUAL DEPICTIONS OF MINORS ENGAGED IN SEXUALLY EXPLICIT CONDUCT**

9. The following definitions apply to this Affidavit:

a. "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that is not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. See 18 U.S.C. §§ 2252 and 2256(2).

c. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

d. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibitions of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

**COMPUTERS AND CHILD PORNOGRAPHY**

10. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

11. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

a. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

b. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as America Online ("AOL") and Microsoft, which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

c. The Internet allows users, while still maintaining anonymity, to easily locate (1) other individuals with similar interests in child pornography; and (2) websites that

offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for "footprints" of the websites and images accessed by the recipient.

d. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 160 gigabytes are common. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful

---

2

*"Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to and interaction with that web site.*

laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## THE INVESTIGATION AND THE SUBJECT PREMISES

12. For the reasons set forth below, there is probable cause to believe that evidence of the production, distribution and possession of child pornography will be located at the PREMISES.

13. On June 9, 2009, an individual hereinafter referred to as "Confidential Source" or "CS" was charged by Grand Jury Indictment in the United States District Court for the District of Columbia with violations of 18 U.S.C. §§ 2252A(a)(1) and 2256(8) (Transportation of Child Pornography); 18 U.S.C. §§ 2423(b) and 2246(2) (Travel with Intent to Engage in Illicit Sexual Conduct); and 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8) (Possession of Child Pornography). CS is currently held without bond pending trial in that case. On June 15, 2009, and June 23, 2009, CS agreed to meet with Federal Bureau of Investigation Special Agent Chadwick Elgersma, as well as the Assistant United States Attorney responsible for prosecuting CS's case, to discuss CS's knowledge of individuals involved in the sexual abuse and molestation of children. Pursuant to a written agreement between CS and the United States Attorney's Office for the District of Columbia, no statements made by CS may be used directly against CS in any criminal prosecution, except a prosecution for perjury or false statement, or in the event that CS were to offer any defense, argument or testimony that contradicted statements made by CS during such meetings. To date, the criminal prosecution of CS in the United States District Court for the District of Columbia remains pending, and no plea agreement has been entered into between the parties to that case.

14. During the June 15 and June 23, 2009, meetings, CS stated that during online

chat sessions using the internet-based video chat program ICUii, which allows its users to engage in online chat conversations while viewing live video images of each other broadcast via webcams, CS had witnessed an individual with the ICUii user name "cooper2" or "cooperse" sexually molesting an African-American child, who appeared to be under the age of ten, and broadcasting that sexual molestation using a webcam. CS described the individual with the ICUii user name "cooper2"or "cooperse" as a white male, in his mid-forties, tall, with a medium build, brown hair, glasses, and no facial hair. CS stated that he had met the individual with the ICUii user name "cooper2"or "cooperse" approximately four years ago while chatting on ICUii, that they corresponded as frequently as every few weeks over that time period, and that in total CS had seen the individual with the ICUii user name "cooper2"or "cooperse" over webcam as many as one hundred times. According to CS, on approximately three or four occasions over the past four years, and as recently as approximately one year ago, CS witnessed the individual with the ICUii user name "cooper2"or "cooperse" perform oral sex on an African-American child who appeared to be under the age of ten, and spread and lick the child's anus, all of which activity was displayed to CS using the individual's webcam. Also according to CS, the individual with the ICUii user name "cooper2"or "cooperse" advised CS of the following: that he lived in the Raleigh/Durham area of North Carolina; that the child was an adopted child, one of two adopted African-American children; that he had a live-in gay male partner who did not participate in the sexual abuse; and that he had allowed other individuals to sexually molest the child.

15. On June 15, 2009, an administrative subpoena was sent to ICUii, requesting user

information for the user accounts "cooper2"or "cooperse." ICUii is a subscription program that charges its users a fee in order for the user to install proprietary software on the user's computer. The user must provide certain personal information in order to register and install that software, to include a name and credit card information. On June 17, 2009, representatives of ICUii responded to that subpoena and provided information that the ICUii account of user "cooper2" belongs to Frank Lombard, with a billing address of

NC. ICUii listed Frank Lombard's email address as fml66@aol.com and his telephone number as

. ICUii also indicated that Frank Lombard's profile description stated he was interested in "perv fam fun," a reference to incestuous child molestation. ICUii also provided the FBI with information regarding a customer service complaint sent to ICUii in January, 2007. That complaint alleged that an individual (hereinafter "complainant") had chatted with Frank Lombard on ICUii. During this chat, Frank Lombard told the complainant that he "was into incest" and that he had adopted two African-American children. The complainant also explained that Frank Lombard described himself, in his profile, as being a "perv dad for fun."

16. On June 17, 2009, a fee-for-service database search listed Frank Lombard's date of birth as being November 3, 1966, with a current residence of 24 Indigo Creek Trail, Durham, NC, 27712. A fee-for-service database also listed Frank Lombard's previous address as 1807 Turning Leaf Lane, Durham, NC, 27712. North Carolina driver's license records indicate that Frank Mccorkle Lombard, d/o/b 66, SSN -8198, described as a white male, brown hair, 5'11" tall, currently resides at 24 Indigo Creek Trail, Durham, NC. The North Carolina driver's license photo of Frank Mccorkle Lombard is consistent with the description of the individual with the ICUii user name "cooper2"or "cooperse" given

by CS. North Carolina driver's license records also reveal that a Kenneth W. Shipp, d/o/b SSN 532, maintains a current address of 24 Indigo Creek Tr., Durham, NC. The United States Postal Service has confirmed that both Frank Mccorkle Lombard and Ken Shipp currently receive mail at 24 Indigo Creek Tr., Durham, NC. On June 22, 2009, a search of the National Crime Information Center (NCIC) database also listed Frank Lombard's residence as 24 Indigo Creek Trail, Durham, NC, 27712. Maintained within an email account contact list of CS is a contact named "Frank Lombard" with the e-mail address: fml6662000@yahoo.com.

17. On June 23, 2009, Washington, DC Metropolitan Police Department Detective Timothy Palchak, a member of the FBI/MPD Child Exploitation Task Force who has been deputized by the Federal Bureau of Investigation (FBI) and authorized to investigate violations of federal law throughout the United States, was conducting an online undercover operation. During that operation, Detective Palchak engaged in an online chat conversation, using the online chat program Yahoo! Instant Messenger, with the Yahoo! user "fml6662000," who maintains a chat display name of "F L." During that conversation, the user with the display name "F L" opened up the "photo share" feature of Yahoo! Instant Messenger and sent to Detective Palchak nude photos of himself, which pictures match the North Carolina driver's license photograph of Frank Mccorkle Lombard. Also during that online conversation, the user with the display name "F L" stated that he had sexually molested his adopted, male, African-American child who he had adopted as an infant and is currently five years-old. He advised Detective Palchak in particular that the child had performed oral sex on him, he had "fingered" the child, and that he had licked the child's anus. He also advised Detective Palchak

that he has met other pedophiles on the program ICUii at times when he was willing to display his adopted child on that program. He further told Detective Palchak that he lived in Durham, North Carolina with his live-in homosexual partner. During the online conversation, "FL" stated that he could not molest the adopted five year-old child when his partner was around, however, his partner was leaving for a four-day business trip the next day, which would allow him the ability to molest the child just as he did the last time his partner had left town. He also stated that he has seen and may still have "hardcore" videos depicting children under five years old engaging in sexual activity, but that he cleans his collection every so often for fear of detection. He further stated that the abuse of the child was easier when the child was too young to talk or know what was happening, but that he had drugged the child with Benadryl during the molestation. Also during the conversation, Detective Palchak sent to "FL" via the Internet a photograph of a clothed adult male and male child that purported to depict Detective Palchak and a child with whom Detective Palchak was sexually active. The full text of the conversation, which was saved by Detective Palchak, is excerpted below:

**F L (6/23/2009 3:41:10 PM): lets do it... off the next few days so be on and off a lot**
Undercover ID (6/23/2009 4:37:04 PM): cool you on
**F L (6/23/2009 4:37:42 PM): yea I am for a bit**
**FL (6/23/2009 4:37:54 PM): nice picture**
Undercover ID (6/23/2009 4:38:25 PM): thank you just a perv here into just about every pervu thing lol
Undercover ID (6/23/2009 4:38:37 PM): especially taboo incest and wyng...
**F L (6/23/2009 4:38:37 PM): mmmmmmmmmmmmm**
**F L (6/23/2009 4:38:48 PM): what i love**
Undercover ID (6/23/2009 4:39:00 PM): mmmmm nice any limits..
**F L (6/23/2009 4:39:05 PM): none**
Undercover ID (6/23/2009 4:39:22 PM): me either 0 on up you
**F L (6/23/2009 4:39:37 PM): same**
Undercover ID (6/23/2009 4:39:41 PM): mmmm nice

Undercover ID (6/23/20094:39:52 PM): only been with one
**F L (6/23/2009 4:39:54 PM): better on the former side than latter**
Undercover ID (6/23/2009 4:39:57 PM): you active
**F L (6/23/2009 4:40:01 PM): sweet**
**F L (6/23/2009 4:40:06 PM): b or g?**
Undercover ID (6/23/2009 4:40:11 PM): b
Undercover ID (6/23/2009 4:40:13 PM): you?
**F L (6/23/2009 4:40:14 PM): mmmmmmm**
**F L (6/23/2009 4:40:29 PM): occassional access with b**
Undercover ID (6/23/2009 4:40:42 PM): mmmm very nice same here my brothers boy
Undercover ID (6/23/20094:40:50 PM): how old is yours
**F L (6/23/2009 4:40:53 PM): age?**
**F L (6/23/2009 4:41:03 PM): 5**
Undercover ID (6/23/20094:41:15 PM): 11 now started when he was 6
Undercover ID (6/23/2009 4:41:17 PM): mmmm
**F L (6/23/2009 4:41:25 PM): very cool**
Undercover ID (6/23/2009 4:41:33 PM): fuck that is hot dying to find another young
Undercover ID (6/23/20094:41:43 PM): i fucking exploded the first time
**F L (6/23/2009 4:41:57 PM): bet ur good with em**
Undercover ID (6/23/2009 4:42:04 PM): ohhhh yesssssssss
Undercover ID (6/23/2009 4:42:14 PM): i bet you are too
**F L (6/23/2009 4:42:19 PM): lol**
Undercover ID (6/23/2009 4:42:20 PM): pies?
Undercover ID (6/23/2009 4:42:21 PM): lol
**F L (6/23/2009 4:42:24 PM): yessssss**
Undercover ID (6/23/2009 4:42:26 PM): mmmm
**F L has accepted your invitation to start photo sharing.**
Undercover ID (6/23/20094:44:38 PM): yummmy
**F L (6/23/2009 4:44:48 PM): thnks**
Undercover ID (6/23/2009 4:45:05 PM): yw
**F L (6/23/2009 4:45:06 PM): dont have any of my boys for u here**
Undercover ID (6/23/2009 4:45:24 PM): damn thats cooL.. let me see if i have any
Undercover ID (6/23/2009 4:45:36 PM): any boy is good lol to perv too
**F L (6/23/2009 4:45:47 PM): lol**
**F L (6/23/2009 4:45:57 PM): some ways a boy not related to can be better**
Undercover ID (6/23/2009 4:46:01 PM): my brother with Tyler
**F L (6/23/2009 4:46:25 PM): mmmmmmmm cute**
Undercover ID (6/23/2009 4:46:31 PM): your right about that love seeing them abused mmmmm
**F L (6/23/2009 4:46:42 PM): can loosen up a bit more**
**F L (6/23/2009 4:46:47 PM): freer**
Undercover ID (6/23/2009 4:46:55 PM): yesssss
**F L (6/23/2009 4:47:23 PM): less stress about long term consequences**
Undercover ID (6/23/2009 4:47:58 PM): your soo right about that im trying to find a

crack prostitute that
will let me hang out with her boy
Undercover ID (6/23/2009 4:48:06 PM): no luck yet but working on it
**F L (6/23/2009 4:48:31 PM): exactly... perfect arrangment...**
Undercover ID (6/23/2009 4:48:40 PM): any random good ones??
**F L (6/23/2009 4:49:08 PM): not here on this machine**
Undercover ID (6/23/20094:49:13 PM): ok cool
Undercover ID (6/23/2009 4:49:20 PM): damn....
**F L (6/23/2009 4:49:26 PM): yea ... sorry**
**F L (6/23/2009 4:49:32 PM): this is the family machine**
**F L (6/23/2009 4:49:36 PM): keep it cleaner**
Undercover ID (6/23/2009 4:49:37 PM): oh ic
Undercover ID (6/23/2009 4:49:58 PM): yes that is safe when are you going to be on
the pervu one??
**F L (6/23/2009 4:50:05 PM): where u located?**
Undercover ID (6/23/2009 4:50:10 PM): im in VA
Undercover ID (6/23/2009 4:50:11 PM): you?
**F L(6/23/2009 4:50:15 PM): NC**
Undercover ID (6/23/2009 4:50:29 PM): ahh ok nice put there
Undercover ID (6/23/2009 4:50:42 PM): out there'
**F L (6/23/2009 4:51:05 PM): yea it is... in durham...**
Undercover ID (6/23/20094:51:15 PM): ahhh cool very nice
Undercover ID (6/23/20094:51:30 PM): you marreid? bi ? boyfreind?
**F L (6/23/2009 4:51:36 PM): gay**
**FL (6/23/2009 4:51:40 PM): have boyfriend**
**F L (6/23/2009 4:51:46 PM): not a perv**
Undercover ID (6/23/2009 4:51:49 PM): sweet hey pervy too
**F L (6/23/2009 4:51:58 PM): so discrete**
Undercover ID (6/23/2009 4:52:18 PM): safer that way my last bf was not into it at all
**F L (6/23/2009 4:52:39 PM): means it has to be nastier with the iii ones**
Undercover ID (6/23/2009 4:52:47 PM): mmmmmmmmm yesssssssss
**F L (6/23/2009 4:53:01 PM): less consensual**
**F L (6/23/2009 4:53:12 PM): more subversive**
Undercover ID (6/23/2009 4:53:23 PM): i love that have seen a few good ones on gg
and leu 2
**F L (6/23/2009 4:53:36 PM): what is gg?**
**F L (6/23/2009 4:53:45 PM): I have been on icu2**
Undercover ID (6/23/2009 4:53:47 PM): you have good hardcore vids with 0-5
Undercover ID (6/23/2009 4:53:57 PM): guilty groups
Undercover ID (6/23/2009 4:54:18 PM): some good pervy chats
Undercover ID (6/23/2009 4:54:25 PM): and pics
**FL (6/23/2009 4:54:34 PM): have seen and may still have some**
**FL (6/23/2009 4:54:43 PM): I clean out every so often**
Undercover ID (6/23/20094:54:51 PM): i hid all my pervy stuffs on a seperate drive

though

**FL (6/23/2009 4:55:01 PM): smart**

Undercover ID (6/23/2009 4:55:03 PM): you me too get nervous

Undercover ID (6/23/2009 4:55:14 PM): put most on a thumbdrive and hid it real good

**F L (6/23/2009 4:55:21 PM): smart**

**F L (6/23/2009 4:55:47 PM): fiind other pedos on gg? they come and go on icu2 seems to me**

Undercover ID (6/23/2009 4:56:20 PM): yeah havent had alot of luck lately on leu a litttle on gg and some on yahoo

Undercover ID (6/23/2009 4:56:27 PM): where you been haveing the best luck

**FL (6/23/2009 4:58:01 PM): some on yahoo but never meet on yahoo... haven't mastered how to do that yet... met on icu2 when I was willing to show lii one, but more pervs and fewer other actives, met some on aol for a bit but they tightened down**

Undercover ID (6/23/2009 4:58:53 PM): I know Yahoo used to be real good but hthey shut down the fetish rooms

Undercover ID (6/23/20094:59:07 PM): how did you get the 5 that is fucking hot!

**F L (6/23/2009 4:59:22 PM): adopted**

Undercover ID (6/23/2009 4:59:25 PM): mmmmmm

Undercover ID (6/23/2009 4:59:30 PM): fucking lucky....

Undercover ID (6/23/2009 4:59:44 PM): that is hot!

**F L (6/23/2009 4:59:55 PM): lucky**

Undercover ID (6/23/2009 4:59:56 PM): you must go crazy all the time

**F L (6/23/2009 5:00:00 PM): and frustrating**

Undercover ID (6/23/2009 5:00:07 PM): why frustrating?

**F L (6/23/2009 5:00:13 PM): especially with my bf's eyes on me all the time lol**

**F L (6/23/2009 5:00:22 PM): cant do it less he is gone**

Undercover ID (6/23/2009 5:00:36 PM): lol ahh hopefully he doesnt say anything you know

**F L (6/23/2009 5:01:01 PM): have to be really discrete**

Undercover ID (6/23/2009 5:01:02 PM): im getting hot now thinking about it

**F L (6/23/2009 5:01:12 PM): easier when he was too young to know what was happening**

**F L (6/23/2009 5:01:18 PM): and when he couldnt talk**

Undercover ID (6/23/2009 5:01:22 PM): yeah how old is he now

**F L (6/23/2009 5:01:31 PM): but now so much more challening**

**F L(6/23/2009 5:01:35 PM): is 5 now**

Undercover ID (6/23/2009 5:01:37 PM): fuck i bet

**F L(6/23/2009 5:01:43 PM): was 8 days when I got him**

Undercover ID (6/23/2009 5:01:47 PM): mmmmmm

Undercover ID (6/23/2009 5:01:58 PM): i would love to suck on a lii pp like that

damn..

**F L (6/23/2009 5:02:07 PM): yea was great**
**F L (6/23/2009 5:02:14 PM): tight iii hole too**
Undercover ID (6/23/2009 5:02:17 PM): did you get to suck right away?
Undercover ID (6/23/2009 5:02:20 PM): mmmmm
Undercover ID (6/23/2009 5:02:28 PM): what all have you done
Undercover ID (6/23/2009 5:02:35 PM): fuck im hard
**F L (6/23/2009 5:02:35 PM): waited till got to the hotel**
**F L (6/23/2009 5:02:50 PM): havent fuked him**
**F L (6/23/2009 5:03:05 PM): not so interested in sucking him, rather him do me**
**F L (6/23/2009 5:03:29 PM): fingered when iii**
Undercover ID (6/23/2009 5:03:29 PM): mmmmmmm ive done both with tyler how
does he suck?
**F L (6/23/2009 5:03:32 PM): mostly**
Undercover ID (6/23/2009 5:03:35 PM): take the cum?
**F L (6/23/2009 5:03:43 PM): yea**
Undercover ID (6/23/2009 5:03:46 PM): mmmmm
Undercover ID (6/23/2009 5:04:00 PM): fucking hot how does he look cute/
Undercover ID (6/23/2009 5:04:01 PM): ?
**F L (6/23/2009 5:04:09 PM): yea he is**
Undercover ID (6/23/2009 5:04:19 PM): Iii asian boy?
**F L (6/23/2009 5:04:24 PM): he is african american... so some guys not into that**
Undercover ID (6/23/2009 5:04:28 PM): mmmmmm
Undercover ID (6/23/2009 5:04:44 PM): love that i go to DC looking for em.. just no
luck yeah
**F L (6/23/2009 5:04:56 PM): love DC**
Undercover ID (6/23/2009 5:05:23 PM): yeah its a fun place
Undercover ID (6/23/2009 5:05:47 PM): Tyler is older now so i dont get to really do
much anymore
**F L (6/23/2009 5:06:03 PM): why not?**
Undercover ID (6/23/2009 5:06:30 PM): they dont come around as much moved from
the area
**F L(6/23/2009 5:06:38 PM): too bad**
Undercover ID (6/23/2009 5:06:51 PM): when is the last time you got sucked by yours
**F L (6/23/2009 5:06:52 PM): werent u nervour brother would find out?**
Undercover ID (6/23/2009 5:06:59 PM): i know
**F L (6/23/2009 5:07:02 PM): last time bf left town**
Undercover ID (6/23/2009 5:07:02 PM): yes very
Undercover ID (6/23/2009 5:07:20 PM): nice...
**F L (6/23/2009 5:07:33 PM): also last time with his hole**
Undercover ID (6/23/2009 5:07:45 PM): make sure he doesnt tell his freinds or your bf
Undercover ID (6/23/2009 5:07:47 PM): mmmmm
Undercover ID (6/23/2009 5:07:53 PM): finger it?
**F L (6/23/2009 5:08:03 PM): licked**

**F L (6/23/2009 5:14:22 PM): not so hard**
Undercover ID (6/23/2009 5:14:29 PM): i thought it was too difficult
**F L (6/23/2009 5:14:29 PM): esp for a black boy**
**F L (6/23/2009 5:14:54 PM): nope- is if you want a white baby, but most dont want minorities**
Undercover ID (6/23/2009 5:15:01 PM): i know you were drooling when you got to take him home...
Undercover ID (6/23/2009 5:15:08 PM): ahhh shame
**F L(6/23/2009 5:15:28 PM): no idea how eager**
Undercover ID (6/23/2009 5:15:35 PM): fuck i bet
**F L (6/23/2009 5:15:44 PM): lol**
Undercover ID (6/23/2009 5:15:47 PM): how soon did you get him to suck you
**F L(6/23/2009 5:16:02 PM): it is instinct**
**F L (6/23/2009 5:16:13 PM): remember? not hard or long**
**F L (6/23/2009 5:16:25 PM): i was hard and long but ... you now**
Undercover ID (6/23/2009 5:16:28 PM): just the head
Undercover ID (6/23/2009 5:16:31 PM): lol
**F L (6/23/2009 5:16:33 PM): to start**
Undercover ID (6/23/2009 5:16:33 PM): of course
Undercover ID (6/23/2009 5:17:01 PM): damn im dying to see him to perv too even if he has clothes on
lol
**F L (6/23/2009 5:17:14 PM): look, i gotta split, bf coming home soon and have a couple things to do- he**
**is leaving for a business trip tomorrow and need to get some arrangements made**
Undercover ID (6/23/2009 5:17:14 PM): when are you going to be on the pervy computer lol?
**F L (6/23/2009 5:18:05 PM): I have backed down from much camstauff... iii dangerous these days but**
**maybe we can arrange something**
Undercover ID (6/23/2009 5:18:07 PM): ok cool it was great chatting with you
**F L(6/23/2009 5:18:12 PM): u 2**
**F L (6/23/2009 5:18:18 PM): love perv buds**
Undercover ID (6/23/2009 5:18:23 PM): mm me too
**F L (6/23/2009 5:18:25 PM): wish u were closer lol**
Undercover ID (6/23/2009 5:18:44 PM): you going be on later or tomorrow me too we could perv out
togehter
Undercover ID (6/23/2009 5:19:13 PM): damn you will have him for 2 days while he is gone
**F L (6/23/2009 5:19:14 PM): tomorrow I am sure**
Undercover ID (6/23/2009 5:19:17 PM): lucky
**F L (6/23/2009 5:19:23 PM): with him gone things easier**
Undercover ID (6/23/2009 5:19:23 PM): cool sounds good

Undercover ID (6/23/2009 5:19:27 PM): cool
**F L (6/23/2009 5:19:40 PM): though prefer to do incriminating things real time**
**F L (6/23/2009 5:19:44 PM): not cyber**
Undercover ID (6/23/2009 5:19:53 PM): cool
**F L (6/23/2009 5:20:07 PM): the cyber cops are everywhere....**
Undercover ID (6/23/2009 5:20:09 PM): understand that
Undercover ID (6/23/2009 5:20:19 PM): i know 1m always careful
**F L (6/23/2009 5:20:19 PM): mmmmmmmm ur a sexy fuker**
Undercover ID (6/23/2009 5:20:26 PM): lol
Undercover ID (6/23/2009 5:20:27 PM): ty
**F Lhas closed photo sharing.**
**F L (6/23/2009 5:20:59 PM): if id known you earler we could have a pssel 0 kids... woof**
Undercover ID (6/23/2009 5:21:09 PM): mmmmm
**F L (6/23/2009 5:21:11 PM): passel I mean**
Undercover ID (6/23/2009 5:21:11 PM): i know
**F L (6/23/2009 5:21:48 PM): ok... well got a get together**
Undercover ID (6/23/2009 5:22:10 PM): ok have fun .. especially with him for two days lol
**F L (6/23/2009 5:22:37 PM): 2 days**
**F L (6/23/2009 5:22:42 PM): I got 4 woooooof**
Undercover ID (6/23/2009 5:23:16 PM): ill be thinking about you
Undercover ID (6/23/2009 5:23:17 PM): mmm
**F L (6/23/2009 5:23:32 PM): who knows maybe well be thinking about you**
Undercover ID (6/23/2009 5:23:42 PM): dont tease me lol
Undercover ID (6/23/2009 5:24:00 PM): are you babysitting while dad is away lol
**F L (6/23/2009 5:24:10 PM): oh i am not teasing at all**
Undercover ID (6/23/2009 5:24:21 PM): even bettter
**F L(6/23/2009 5:24:24 PM): furthest thing from it actually**
Undercover ID (6/23/2009 5:24:29 PM): mmmmmmmmmmmmmmmmmmmm
**F L (6/23/2009 5:25:03 PM): sorry have to go**
Undercover ID (6/23/2009 5:25:10 PM): cool ttyl
**F Lis typing a message.**
**F L (6/23/2009 5:25:13 PM): hope to see SEE u soon**
Undercover ID (6/23/2009 5:25:21 PM): me too take care

18. On June 24, 2009, beginning at approximately 9:49 a.m., Detective Palchak engaged in another online conversation with "F L." During that online conversation, "F L" opened up a live webcam and displayed to Detective Palchak a still photograph of an African-American child who "F L" indicated was his 5 year-old adopted child. Also during that conversation, "F L" invited Detective Palchak to fly to Durham

this week in order to have sexual contact with his 5 year-old adopted child. In particular, "F L" suggested that Detective Palchak fly into Raleigh/Durham Airport and stay at a Hilton hotel on Hillsborough Rd. "F L" was fully visible over the webcam, including his face. "F L" is identical to the North Carolina driver's license photograph of Frank Mccorkle Lombard.

19. A general internet search revealed that Frank M. Lombard is currently the associate director of the Center for Health Policy at Duke University, located in Durham, NC. A search of the Duke University web page revealed that Kenneth W. Shipp is currently a clinical pharmacist, also at Duke University. A further general internet search revealed that, according to a 2003 annual report, a donation was made jointly to the "Genesis Home" in Durham, North Carolina by Kenneth Shipp and Frank Lombard. According to annual reports of that organization available at www.genesishome.org, Genesis Home is an organization that assists needy families in making a transition out of homelessness, and maintains an onsite child care center. Volunteer opportunities with the organization include one-on-one tutoring of children and providing child care. Annual reports for the organization, as well as the organization website, feature numerous photographs of African-American children who appear to be under the age of ten years old.

20. The internet-based video chat program ICUii allows users to archive conversations between users on the user's computer. Accordingly, online chat conversations may be saved by that user and kept indefinitely. Users may also save and retain on their computer still images or screen shots taken during live video chat sessions with other users. Moreover, the internet chat program Yahoo! Instant Messenger also allows its users to archive

online chat conversations on their computer, which may be saved by the user indefinitely.

**REQUEST TO SEARCH THE PREMISES**

21. In light of the foregoing information, and based on my experience and training, I submit that there is probable cause to believe that the PREMISES contains visual depictions of minors engaging in sexually explicit conduct, child pornography and/or other evidence concerning violations of Title 18, United States Code, Sections 2251, 2252, and 2252A, and that the fruits and instrumentalities of those violations, to include any children depicted in any such materials, can be found at the PREMISES. Specifically, any computers or computer equipment at the PREMISES are likely to be the primary means of accessing the Internet for purposes of collecting, producing or distributing child pornography and therefore may be seized as "property designed for use, intended for use, or used in committing a crime" pursuant to Federal Rule of Criminal Procedure 41(c)(3) along with data storage devices such as diskettes, thumb drives and other devices upon which child pornography can be stored. In addition, because a potential minor victim of visually depicted child sexual abuse may be in imminent threat of harm, pursuant to Federal Rule of Criminal Procedure 41(c)(4), authority is specifically requested to seize any person "who is unlawfully restrained." The evidence, fruits, and instrumentalities of the offenses include the items described in Attachment A.

## METHODS TO BE USED TO SEIZE AND SEARCH COMPUTERS AND COMPUTER-RELATED EQUIPMENT LOCATED IN THE PREMISES

22. Based upon my training, experience, and information related to me by agents and others involved in the forensic examination of computers and other electronic media, I know that electronic data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips. I also know that searching computerized information for evidence or instrumentalities of a crime commonly requires agents to seize most or all of a computer system's input/output peripheral devices, related software documentation, and data security devices (including passwords), so that a qualified computer expert can accurately retrieve data from the system or phone in a laboratory or other controlled environment. This is true for the following reasons:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched.

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not

scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the PREMISES. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing up to 100 gigabytes of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of millions of pages of data.

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence,

contraband, or instrumentalities of a crime.

23. In searching for data capable of being read, stored, or interpreted by a computer, law enforcement personnel executing the applicable Search Warrant will employ the following procedure:

a. Upon securing the PREMISES, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will search and seize any computers, computer equipment, and storage devices and transport these items to an appropriate law enforcement laboratory for review as to whether these items contain contraband. Because of the lengthy period of time necessary to perform a complete search of all material contained in any computers, computer equipment and storage devices, it would not be feasible to conduct this search on the PREMISES, and seizure is necessary so that the preservation of data is not jeopardized. The computers, computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

b. If upon the search of the computers, computer equipment, and storage devices it is determined that the computers, computer equipment, and storage devices do not contain contraband, an instrumentality of the offense, a fruit of the criminal activity, or evidence of the offense specified above, then the computer personnel will return the cell phones, computer equipment and storage devices to the PREMISES.

c. The analysis of electronically stored data may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

"opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic "key-word" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

24. Any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the offense specified above.

25. In searching the data, the computer personnel may examine all of the data contained in the cell phones, computers, computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden," or encrypted data to determine whether the data falls within the list of items to be seized as set forth in this affidavit.

26. If the computer personnel determine that the cell phones, computers, computer equipment and storage devices are no longer necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(b), the Government will return these items.

27. In order to search for data from computers, computer equipment and storage devices, law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

a. any computers, computer equipment, and storage device capable of being

used to commit, further or store evidence of the offense listed above;

b. any computers and computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, routers and optical scanners;

c. any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, cell phones, personal digital assistants, cameras, and videocameras;

d. any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software;

e. any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f. any physical keys, encryption devices, dongles, and similar physical items that are necessary to gain access to the computer equipment, storage devices, or data; and

g. any passwords, password files, test keys, encryption codes, or other information necessary to access the cell phones, computer equipment, storage devices, or data.

28. In addition, law enforcement personnel will need to seize and search any device that can capture or store a photographic or video image.

## CONCLUSION

29. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that FRANK MCCORKLE LOMBARD has

violated Title 18 United States Code Section 2251(a) and (b), Title 18 United States Code Section 2252(a)(2), and Title 18 United States Code Section 2252A(a)(5)(B), and that FRANK MCCORKLE LOMBARD maintains child pornography and children depicted in such child pornography inside of the PREMISES described herein.

30. Based on the aforementioned factual information, and given the propensity of collectors of such materials to maintain and increase the number of images in their collections, your affiant believes that evidence, fruits and instrumentalities of violations of Title 18 United States Code Section 2251(a) and (b), Title 18 United States Code Section 2252(a)(2), and Title 18 United States Code Section 2252A(a)(5)(B), listed in Attachment A to this Affidavit, which is incorporated herein by reference, are concealed at the PREMISES. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them.

31. Based upon my knowledge, training and experience, and consultations with law enforcement experts, I know that searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment.

32. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment A.

E. MICHAEL SMITH, Jr.,
Special Agent
North Carolina State Bureau of Investigation

Sworn and subscribed before me this 24th day of JUNE, 2009

United States Magistrate Judge

## ATTACHMENT A

1. Records, documents, and materials, including but not limited to, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, video cameras, webcams, routers, cell phones, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, RM and MPEG), and the data within the aforesaid objects relating to said materials, which may be, or are, used to: visually depict minors engaging in sexually explicit conduct and/or child pornography; contain information pertaining to the interest in visual depictions of minors engaging in sexually explicit conduct and/or child pornography, or sexual activity with children; and/or distribute, receive, or possess visual depictions of minors engaging in sexually explicit conduct and/or child pornography, or information pertaining to an interest in visual depictions of minors engaging in sexually explicit conduct and/or child pornography.

2. Originals and copies of photographs, negatives, magazines, motion pictures, video tapes, books, slides, audiotapes, handwritten notes, drawings and/or other visual media that depict what appears to be a minor engaged in sexually explicit conduct.

3. Materials and photographs depicting sexually explicit conduct with what appear to be minors, including material that may assist in the identification and location of such minors.

4. Records evidencing ownership and/or use of computer equipment found in the premises.

5. Records which evidence membership with any website or chat room or organizations related to visual depictions of minors engaging in sexually explicit conduct and/or child pornography, including without limitation, e-mail, correspondence and envelopes, passwords, credit card bills or receipts, and URL addresses.

6. Children who may have been employed or used in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

**ATTACHMENT B**

The premises to be searched is located at 24 Indigo Creek Trail, Durham, NC. The address is described as a two story, single family residence with the numbers "24" affixed to a post on the covered front porch. The home has a brick foundation, with aluminum-type siding above the foundation. 24 Indigo Creek Trail is located within a small community comprised of 24 individual houses. Each are separately owned, and the owners each own a share of the community property. The community is bordered on two sides by paved parking. Access to the residences is by cement sidewalks only. The front of each residence faces inward to a common walkway linking the houses. There is also a back entrance to 24 Indigo Creek Trail that opens to a walkway leading to the back parking area. The residence is secluded by trees and other tall plants. When a person enters the community through the main entrance, 24 Indigo Creek Trail is the last house on the left, and the end of the walkway.